## SMITH vs. THE CITY OF MILWAUKEE.

It is u general rule that municipal corporations are responsible for damages caused by the negligence or unskillfulness of their officers or agents in constructing public works.

Where by a neglect to provide proper sewerage in the grading of a street, a nuisance is created upon a private lot, the city may provide for abating it as for other similar improvements; and where the work for that purpose has been done by contract, in a regular manner, an assessment upon the lot of the cost of the work is valid at law. *Weeks vs. The City of Milwaukee,* 10 Wis., 242, explained.

The owner of the lot has, in such a case, a right of action against the city for the damages caused by the negligent construction of the street; and in case he enforces his legal remedy he waives his right in equity to restrain a sale of the lot for the assessment.

But if he neglects to resort to his equitable remedy in proper time, he may be held to have waived it, and to be remitted to his action for damages.

Where the lot owner has not sought the interference of equity, the contractor or his assignee cannot recover the amount of such assessment from the city on the ground that the lot owner may, if he chooses, prevent its being enforced.

Whether in constructing streets across a marsh, any system of sewerage would be effectual to prevent stagnant water from afterwards accumulating on the lots,

is a question of fact; and when that question arises in any case, it is for the jury to say, upon proper proofs, whether or not there was due care and skill in constructing the streets.

A complaint against a city alleged that "by the neglect and failure of the defendant to provide any proper or necessary sewers, or in fact any sewers at all, the surface water did not and could not pass off from [a certain lot belonging to the plaintiff], as before the grades of [the streets and alleys adjoining said lots] were raised it had always done; and that said surface water, by reason of being thus retained upon said lots became and was stagnant," &c. *Held,* on demurrer, that this was a sufficient allegation of negligence and unskillfulness in the construction of the street by the city, and brought the case within the decision in *Weeks v. The City of Milwaukee,* 10 *Wis.,* 242.

APPEAL from the Circuit Court for *Milwaukee* County.

This was an action to recover from the *City of Milwaukee* the amount of an assessment made upon a lot in said city for work done in filling the same under contract with the city. The circuit court refused to receive any evidence under the complaint, and dismissed the same upon the defendant's motion, on the ground that it did not state a cause of action. The facts alleged in the complaint, and relied on as a cause of action, will sufficiently appear from the opinion of this court.

*Butler, Buttrick & Cottrell,* for appellant, contended, 1. That under the decision in *Weeks v. Milwaukee,* 10 Wis., 242, the street commissioner's certificate in this case was illegal and void. 2. That the city having assumed to have authority to order the filling to be done at the expense of the lot, when in fact it had no such authority, and the contractors having done the work in good faith, the city was liable to the plaintiff (as assignee of the contractors) to the extent to which he would have been benefitted by the contract had the authority actually existed, i. e., to the extent of the sum of money mentioned in the certificate, with interest. The case falls within the principle declared by his court in its reasoning in *Norton v. Rock County,* 13 Wis., 611. 3. As the nuisance was one affecting injuriously the general health, the respondent had the power to order it to be abated and to contract for the performance of the work, not at the expense of the property, but

at the expense of the city. *Miller v. Milwaukee*, 14 Wis., 642. In fact, having itself created the nuisance, the city was bound to remove it. Besides the power to abate such a nuisance is granted in express terms by sec. 3, ch. 4 of the respondent's charter (Laws of 1852, ch. 56.) See also, sec. 5, ch. 4. 4. The complaint, besides showing the contract for doing the work, and that it was actually done, shows that it was necessary for the public good, and avers what the performance of it was actually worth. Upon these allegations the plaintiff is entitled to recover *quantum meruit.* This is implied in the reasoning of this court in *Eilert v. The City of Oshkosh*, 14 Wis., 586.

*J. La Due*, for respondent.

*By the Court*, PAINE, J. In the case of *Weeks v. Milwaukee*, 10 Wis., 242, this court decided that where the city had, by negligently and unskillfully constructing a street, created a nuisance upon the plaintiff's lot, the plaintiff was entitled to an injunction to prevent the city from selling the lot for the assessment imposed on it for abating such nuisance. The plaintiff in this case, the assignee of several contractors, averring that they had done work upon lots in abating nuisances under regular contracts with the proper officers, by which they were to be paid in street commissioners' certificates, then proceeds to allege that the nuisances so abated had, like that in the Weeks case, been caused solely by the act of the city in constructing streets around the lots, and neglecting to put in proper sewers. He then claims that inasmuch as an assessment upon the lots for such work cannot be enforced, the city is liable to him directly for its value, and this action is brought to recover it. It is suggested by the counsel for the city, that the real fact in this case is that the lots in question were in a marsh, so that after the streets were properly graded across the marsh, any system of sewerage to prevent stagnant water from accumulating in the lots, would have been impracticable.

If this was so it was a very different state of facts from what was shown in the Weeks case. There the lot in question was on the side of a hill, where it was very apparent that the construction of a street would never have created a nuisance upon it by reason of stagnant water, if proper drains had been made. Upon this point there was no dispute.

But whether in constructing streets across a marsh, any system of sewerage would be effectual to prevent stagnant water from afterwards accumulating on the lots, is entirely another question. And it is a question of fact. It would be for the jury to say upon proper proofs, whether there was due care and skill in constructing the streets or not.

But it is sufficient to say that the complaint does not show that the lots here were in a marsh, and as a mere question of pleading we are inclined to think its averments are sufficient to bring the case within the decision in the Weeks case. It avers that by the neglect and failure of the defendant to provide any proper or necessary sewers, or in fact any sewers at all, the surface water did not and could not pass off from said lot, as before the grades of said streets and alleys were raised it had always done; and that said surface water, by reason of being thus retained upon said lots, became and was stagnant, and created thereby the very nuisance so ordered to be abated, &c. Construing this as a sufficient allegation of negligence and unskillfulness in the construction of the street, it shows a case to which the former decision is applicable. We regard it also as a settled rule, that municipal corporations are responsible for damages occasioned by the negligence or unskillfulness of their agents and officers in constructing public works. There are cases which hold that they are not liable for damages occasioned by the negligence of a contractor or his servants, he exercising a distinct employment. *Painter v. Pittsburg*, Am. Law Register, April, 1864, p. 350. But where the injury is occasioned by not putting a sewer where one is required, the fault is in the plan, not in the contractor who constructs accord-

ing to it. And as the plan is devised by the immediate agents of the city, and adopted by it, and the work directed to be done accordingly, if an injury occurs from the want of proper skill in the plan, the city must be liable if there is any liability at all. So that it follows upon the allegations of the complaint that the city would have been liable to the owners for the damages caused by the negligent and improper construction of the streets, and might have been enjoined from selling the lots to collect an assessment for abating the nuisances.

The further question remains, whether upon such facts the city is liable directly to the contractor for the value of the work, the contracts having been let in the ordinary way, with the mutual supposition that the lots were chargeable ? By the charter it is provided that the city shall in no event be liable for any work ordered to be done at the expense of any lot. Still if the city had itself caused a nuisance on the lot of an individual, in such manner as to be liable to him for the damages, there might be some ground for saying that this provision of the charter was inapplicable, and that the city would have an implied power of employing contractors at its own cost to abate the nuisance, as one mode of making compensation to the owner.

But how far such implied power may exist or extend it is not necessary now to enquire. In the Weeks case the point above referred to was very briefly considered, being a minor question in the case. There was no examination of the precise ground upon which the right of the owner to restrain the sale, should rest. Now, after making such examination, though fully satisfied with the decision there made that the owner has such right, yet we are also satisfied that it is a right of an equitable character, rather than one resting upon the technical invalidity of the assessment at law. In all such cases, there being a nuisance in fact upon the lot, the city has jurisdiction to abate it. And the proceedings being regular, the assessment could not be held void at law. And the right of the owner to re-

strain the sale grows out of the fact that it would be a wrongful use of a legal proceeding, for the city to sell his lot to collect the assessment, when it was at the same time liable to refund the amount as damages for having caused the very nuisance abated. It is in the nature of an equitable defense, resting upon the injustice of such a use of the proceeding at law, and should undoubtedly be disposed of according to established equitable principles. But the owner would have the right to make his election among the various remedies. If he should sue at law and recover the damages, there would be no further ground for objection to the enforcement of the assessment. So if he neglects to resort to his equitable remedy in proper time, he may be held to have waived it, and to be compelled afterwards to resort to his action for damages.

Thus, suppose A has given B a bond of indemnity against liability on a certain claim. Judgment is afterwards recovered against B on that claim, and A becomes the assignee of the judgment. If he should attempt to sell the land of B on execution, equity would undoubtedly restrain such a use of the judgment, as between parties holding such relations to each other. But that would not show the judgment to be void at law. On the contrary if B should sue on his bond and recover his damages, A might then enforce the judgment. So if B should allow the execution sale to take place without any resort to his equitable remedy, he might well be said to have waived it, and be obliged afterwards to seek redress in his action on the bond.

The relations and rights of the owner and city, upon an assessment to abate a nuisance caused by the wrong or negligence of the city, seems to us to be of a similar character. True it was said in the Weeks case that it was "illegal" to tax the plaintiff to abate a nuisance which the city had created. But there was no occasion to examine into the precise character of that illegality further than to determine whether it was such as justified the relief sought in that case, which was an

equitable action by the owner to restrain the sale. The general language used must therefore be interpreted by the facts to which it was applied. But a more particular examination has now led us to the conclusion that the character of the illegality, and the relations and rights of the parties, are as before stated.

It follows that this complaint shows no cause of action, even assuming that the city would be directly liable in case the assessments had been avoided, because it fails to show that they have been avoided. The owners may waive their equitable rights and allow the lots to be sold on the assessment. In that case they would be driven to their actions against the city for the damages for creating the nuisances, and the plaintiff here, having then received all that he bargained for, would have no cause for complaint. It is not for him to anticipate the action of the owners, and found an action against the city upon the fact that his certificates may be avoided, when it is also true that they may not be.

Whether he could make the owners of the lots parties with the city, and compel a determination of the questions between them, it is not necessary to decide, as no such thing has been attempted. The question here is, whether the city is directly liable upon showing such a state of facts as would authorize the owners to restrain a sale on the assessment. And we think it is not.

The judgment must be affirmed, with costs.