MORRIS, Respondent, vs. EDWARDS and others, Appellants.

*May 1—May 21, 1907.*

*Highways: Discontinuance: Notice: Laying out: Failure to file order: Decision of town supervisors reversed: Notice of further proceedings: Necessity and validity: Effect of delay: Notice to remove fence: Opening highway by county board: Costs: Separate party defendant.*

1. A highway laid out to connect with two old highways is a whole highway within the calls of sec. 1267, Stats. (1898), and a proceeding to discontinue a portion thereof is rendered invalid by failure to give notice of the hearing, as required by said section, to the occupants of all the lands abutting on such highway, including the portion not sought to be discontinued.

2. Where town supervisors did not file with the town clerk their order laying out a highway within ten days after deciding upon an application therefor, the order is by sec. 1269, Stats. (1898), made inoperative, and subsequent action by them deciding against the application is but an express declaration of the legal consequences following upon their failure to file their first order.

3. Where on appeal the decision of the town supervisors refusing an application to lay out a highway is reversed, and the supervisors proceed under sec. 1282, Stats. (1898), to lay out the highway "in the same manner . . . as if they had originally determined to lay out such highway," the supervisors are not required to give again the notice prescribed by sec. 1267, Stats. (1898).

4. The action of town supervisors refusing to lay out a highway was reversed April 18th. April 25th the supervisors met and made an order laying out the highway and awarded damages to some of the abutting owners, but the order was withheld from the files until May 9th, when they met again and completed their determination as to damages. *Held* that, in the absence of proof to the contrary, it is to be presumed that the meeting and consideration of the matters pending on April 25th were continued to the meeting of May 9th, and that the filing of the order and award on May 9th was in time.

5. A notice to a landowner to remove his fence from a highway . laid out by the town supervisors was not invalidated by a mistake in the recital of the date of the order laying it out, where such mistake was manifestly a clerical error and could not have misled him.

6. A notice to a landowner, served on the day it was dated, to re-
move his fence from a highway laid out by the supervisors
"within thirty days from date of order," was sufficient under
sec. 1284, Stats. (1898), requiring that he be allowed "not less
than thirty days after giving the notice."

7. Sec. 1284, Stats. (1898), provides that when the supervisors lay
out a road the landowner shall be given not less than thirty
days' notice to remove his fence, but that he shall not be re-
quired to remove it between April 1st and November 1st.
Plaintiff, a landowner, failed to remove his fence after proper
notice, and the town supervisors omitted to remove it and
open and put the highway in condition for travel before the
expiration of one year from the time it was laid out. *Held*,
that on an appeal to the county board under sec. 1338, the
chairman of the board, pursuant to its direction, might open
the highway and put it in condition for travel and in so doing
remove the fence in question without giving notice and within
the period between April 1st and November 1st.

8. One of several defendants, in an action for trespass, who did
not appear and answer separately and who made no showing
that he was a separate party defendant, was not entitled to a
separate judgment for costs in his favor, though the court
found that he did not participate in the trespass.

APPEAL from a judgment of the circuit court for Dodge
county: JAMES J. DICK, Circuit Judge. *Reversed.*

This is an action to recover damages for an alleged trespass
upon the property of the plaintiff by the defendants, who
claim to have been acting in accordance with law in opening
a highway under the authority of the chairman of the county
board. On February 12, 1904, six resident freeholders pre-
sented a petition to the supervisors of the town of Calamus,
Dodge county, where these parties reside, for the laying out of
the road in question over plaintiff's farm. On March 10th
the supervisors of the town decided against the application.
Thereupon application was made to the county court for the
appointment of commissioners to review the action of the
supervisors of the town in refusing to lay out the highway.
The commissioners were appointed, and April 18, 1904, the
determination of the supervisors was reversed. On April 25,

1904, the supervisors of the town, without giving notice of the meeting, met for the purpose of laying out the highway, pursuant to the order of the commissioners reversing their former action by which they had refused to lay out the highway. At this meeting and a subsequent meeting the damages and benefits to the property over which the highway was to pass were assessed. On November 11, 1904, the supervisors gave notice to the plaintiff to remove his fence from the highway which had been laid out. The notice is as follows:

"A highway having been laid out through land occupied by you, described as follows: [Description],—by the undersigned and dated on the 11th day of November, 1904, a copy of which is hereto annexed, you are hereby required to remove your fence from the bounds of said highway within thirty (30) days from date of order.

"Dated this 11th day of November, 1904."

The highway laid out in April, 1904, was not opened for travel by the town authorities, and an application was made to the county board that they take such action as was necessary to authorize the county authorities to open the road for travel. The county board took action on this application, and the alleged trespass was committed while the defendants were working on the road under the direction of the chairman of the county board. On April 27, 1905, a petition was filed with the board of supervisors of the town for the discontinuance of part of the highway laid out the previous year (the part from A to C on the diagram on page 94), and for laying out a new road in connection with it (from C to D).

On the same day the supervisors of the town made out a notice that they would meet on May 15, 1905, to consider this petition. This notice was served on all of the owners of the lands abutting on the part of the road to be discontinued and the part to be laid out (from A to C and from C to D), but was not served on some of the occupants of lands abutting on that part of the highway laid out the previous year, but which was not to be vacated under the new petition (B to C).

There is nothing in the record to show that this notice was
served on *John W. Hughes, Gottlieb Selk,* and the heirs of
the Owens estate.   On May 18, 1905, the supervisors of the
town made an order, in accordance with the petition of April

27, 1905, laying out a highway (from C to D) and discontin-
uing a part of the old highway (from A to C), but they made
no award of damages and did not find the benefits arising
from the laying out of the new highway.   Upon appeal to the
county court from this order the action of the supervisors of
the town was reversed "so far as it discontinues any high-
way."   This order was dated August 17, 1905, and was filed
with the town clerk on August 23, 1905.

The trial court found that the defendant *Hughes* had not
participated in the trespass, had not separately answered, and
was not entitled to costs; that the notice for the removal of
the fence was not a legal notice; that the action under the so-
called powers of the county board of supervisors was not ac-
cording to law; that the removal of the fence was within the
period inhibited by the statute, and illegal; that there was no

highway; and that the defendants were guilty of a trespass. Judgment was accordingly awarded against the defendants for $41.50 and for costs. This is an appeal by the defendant *Hughes* from so much of the judgment as denies him his costs, and by the other defendants from the whole of the judgment.

*E. E. Brossard,* for the appellants.

For the respondent there was a brief signed by *M. E. Burke* and *Malone & Miller,* and oral argument by *Mr. Burke.*

SIEBECKER, J. It is unquestioned that the defendants, except *John W. Hughes,* participated in removing plaintiff's fence and in grading the alleged highway over his premises. These acts constitute a trespass and resulted in damage which would be recoverable by the plaintiff, unless the *locus in quo* was a highway, as claimed by the defendants, and unless they acted under authority of the county board in opening a public highway. The circuit court held that there was no legally laid out highway over this portion of plaintiff's premises.

As appears from the foregoing statement of facts, the first proceeding for laying out a highway from the east quarter post of section 34 west, in sections 33 and 34, in the town of Calamus, Dodge county, was commenced in February, 1904, and was carried to the point of opening it over this strip on plaintiff's premises. A second proceeding was commenced in April, 1905, whereby it was sought to vacate a portion of this alleged highway. This latter proceeding is claimed by defendants to be invalid on account of a failure to comply with the statutory requirements for such a proceeding, in that there was no notice given to some of the owners of the lands abutting on the whole highway, part of which was sought to be vacated, and in that the notice given omitted to describe any lands abutting on the part of the highway so attempted to be vacated which would be benefited, injured, or damaged

thereby; and further because the record shows no award of benefits or damages on account of vacating such part of the highway or the laying out of the new highway which connects with the part of the highway not vacated, and that it does not appear that the supervisors made agreements with such owners for such damages, or that the owners of abutting property waived their claims for damages. The diagram given in the foregoing statement of facts shows that the portion of the highway (marked A—C) sought to be vacated was a part of the whole highway laid out in the proceeding of 1904 (whose termini were A and B). It was attempted to lay out a new highway (with the termini C and D) which should connect (at the point C) with the portion of the highway laid out in 1904 but not vacated. It appears that the highway (A—B) alleged to have been laid out by the proceedings of 1904 connected with two old highways at the eastern and western termini, and constituted a whole highway within the calls of sec. 1267, Stats. (1898), providing for the giving of notice to occupants of lands through which it is proposed to lay out, alter, or discontinue a highway. As held in *Schroeder v. Klipp,* 120 Wis. 245, 97 N. W. 909:

"The occupants of lands abutting upon the portion of such highway not sought to be discontinued were entitled to have notice served upon them personally or by copy just as much as the occupants of lands abutting upon the portion of such highway so sought to be discontinued."

This highway, being the connecting one between two old highways, formed a whole highway in this statutory sense. It is undisputed that *Gottlieb Selk* and *John W. Hughes* occupied lands abutting on the portion not sought to be vacated, and there is no proof that they were given notice of the hearing to decide on this application. The record is also insufficient to show that the occupant of the lands known as the Owens estate, which abuts on this highway, received such notice. That failure to give notice to these parties is fatal to

Morris v. Edwards, 132 Wis. 91.

the proceeding was determined in *Schroeder v. Klipp, supra,* and the cases cited. This renders the proceeding to vacate the designated part of such highway invalid and of no effect, and it need not therefore be taken into consideration in determining whether the action of the supervisors in the proceeding of 1904 established a highway over plaintiff's lands at the place in question.

The 1904 proceeding was duly instituted by petition on February 12th and noticed for hearing on March 1st, at which time the supervisors considered it favorably and framed an order to lay out a highway, but withheld this order from the files and records, and at a meeting on the succeeding 10th of March decided not to adopt, file, and record this order, and took action denying the petition and refusing to lay out the highway. This action was incorporated in a written order of that date and was immediately filed with the town clerk. The failure to file and record the order of the March 1st proceeding with the town clerk rendered it inoperative and of no effect, under sec. 1269, Stats. (1898), which provides that the order laying out the highway shall be filed with the town clerk within ten days after deciding upon the application, as follows:

"And in case said supervisors shall fail to file such order and award within the ten days aforesaid they shall be deemed to have decided against such application."

The action of the supervisors on March 10th, declaring their refusal to file the order and deciding against the application, did not change the legal effect of their action resulting from their failure to so file the order. It was but an express declaration of the legal consequences following upon their failure to so file it. One of the petitioners appealed from such refusal to lay out the highway, and the commissioners appointed to review such decision reversed the action of the supervisors. Thereupon they proceeded under sec. 1282, Stats. (1898), to lay out the highway "in the same manner

. . . as if they had originally determined to lay out . . . such highway."

It is contended that the supervisors were required at this stage of the proceeding to again give the notice provided in sec. 1267, Stats. (1898), for the original hearing on the application. The provision of sec. 1282, Stats. (1898), however, goes no further than to direct the supervisors to proceed as if they had decided to lay out the highway. The context of the statute and the duty imposed thereby negative the necessity of giving further notice, and manifestly authorize the supervisors to proceed without it. Any interested person who feels aggrieved respecting the award of damages is given an opportunity under sec. 1285, Stats. (1898), to obtain a review of such action by appeal. We must hold that the supervisors are not required to give such notice to occupants after the commissioners have reversed their action refusing to lay out the highway.

It is further claimed that the proceeding is invalid on account of the failure of the board to file the award of damages within ten days after April 25th, the day on which they proceeded to lay out the highway pursuant to the decision of the commissioners. On April 25, 1904, the supervisors had met at the home of the plaintiff, and by order in writing laid out the highway in conformity to the decision of the commissioners and in conformity to the application. They then made an award of damages to plaintiff and to the Griffith estate, as owners of abutting lands, and thereafter on May 9th they made an award of damages to W. W. Williams. The claims of all other abutting owners for damages were settled by agreements with them. It appears that the order of April 25th laying out the highway and awarding damages to plaintiff and the Griffith estate was withheld from the files of the clerk by the supervisors until the next meeting, on May 9th following, when they decided upon the damages to W. W. Williams and denied damages to John Selk upon the ground

Morris v. Edwards, 132 Wis. 91.

that his benefits offset all claims for damages. It is apparent that the supervisors did not finally determine upon the damages to Williams on April 25th because of some uncertainty as to the title to a strip of the land occupied by him, and they therefore, in order to complete their determination of damages to abutting occupants, did not file their determination so far as completed. When they had completed their decision it was embodied in two separate instruments which were filed with the clerk on May 9, 1904. In the absence of proof to the contrary it is to be presumed that the meeting and the consideration of the matters pending before the supervisors on April 25th were continued to the meeting of May 9th, when they were concluded. Under these circumstances the final decision awarding damages to abutting owners was concluded on May 9th, the date on which the order laying out the highway and awarding the damages was filed with the clerk. The failure of the supervisors to act within ten days after the commissioners' decision reversing their refusal to lay out the highway was held, in *Brock v. Hishen,* 40 Wis. 674, not to affect their jurisdiction, and, in case they unreasonably delayed proceeding thereafter, they could be compelled to discharge their duties. This is evidently upon the obvious ground that, after reversal by the commissioners, any slight irregularities in the proceeding in laying out the highway in conformity to the commissioners' determination should not be permitted to invalidate it and thus cut off the rights of the petitioners and the public. We find no ground for holding that the action of the supervisors on April 25th and May 9th operated to invalidate the proceeding, and we conclude that it established a highway over plaintiff's land at the place in question.

It is urged that the notice to plaintiff on November 11, 1904, was defective and therefore inoperative. The particular defects pointed out are: (1) That the contents of the notice are so uncertain and misleading as to render it void;

and (2) that the time allowed plaintiff for removal of the fence is less than the time allowed by the statute. The notice on its face states that a highway was laid out over plaintiff's land, described as including two strips of land each one and one-half rods wide off the respective north and south sides of two adjoining pieces described in the notice, "by the undersigned, and dated on the 11th day of November, 1904, a copy of which is hereto annexed." It is manifest that the quoted part of the notice was intended to refer to the order of the supervisors laying out the road in the preceding April. In view of the fact that a copy was annexed to the notice it must be presumed that it was a true copy, containing the correct date of the original order, and that plaintiff was thus apprised that the insertion in this notice of November 11th as the date of such order was manifestly a clerical error which could not reasonably have misled him. Another significant fact showing that plaintiff could not reasonably have been misled thereby is that the meeting of April 25, 1904, at which the supervisors adopted the order laying out the highway was held at plaintiff's house. Under these circumstances we do not deem these defects on the face of the notice which was served to be a sufficient irregularity to affect its validity.

The claim that it did not comply with sec. 1284, Stats. (1898), in that he was not allowed the time provided for to remove the fence from within the highway, is not well founded. The notice states: "You are hereby required to remove your fence from the bounds of said highway within thirty (30) days from date of order." The notice was served on plaintiff on the day it was dated, namely, November 11, 1904. It is urged that the words "within thirty (30) days from date of order" required the plaintiff to remove this fence within less than thirty days after the giving of such notice. We do not so understand it. The correct meaning and interpretation of this phrase allows the plaintiff thirty days from the date of the notice to remove his fence, and

that is the equivalent of the statutory provision that he shall be allowed "not less than thirty days after giving the notice." The notice was sufficient, and plaintiff was in default for want of compliance with it.

The evidence shows that the plaintiff did not remove this fence and that the supervisors omitted to remove it and open and put the highway in reasonable condition for travel before the expiration of one year from the time that it was laid out. On May 18, 1905, sixteen freeholders appealed from such refusal to open and put the highway in condition for travel to the county board of supervisors by the service of a written notice of appeal on the chairman of the town board of the town of Calamus. This notice of appeal, with the affidavit of service indorsed thereon, was filed with the county clerk of Dodge county and presented to the county board of supervisors, and at the session of the board on May 23, 1905, they took action thereon by referring it to a special committee appointed by direction of the county board. On May 24, 1905, this committee reported that they had "examined the highway therein mentioned and determined that said highway ought to be opened and put in reasonable condition for travel." This report was adopted at the same session of the board, and the chairman was directed to cause this highway to be opened and put in a reasonable condition for travel. On October 24, 1905, the defendants, under the direction and authority of the chairman of the county board, removed plaintiff's fence from the. locus in quo and tore up and graded portions of the soil. This was done under the direction and authority of the county board of the previous 24th of May. The official action of the county board respecting this matter complies with sec. 1338, Stats. (1898). It is asserted, however, that the chairman of such board could not carry out the direction of the board for opening and putting this highway in condition for travel without first giving plaintiff notice as prescribed by sec. 1284, Stats. (1898), and that plaint-

iff could not be required to remove his fence between April 1st and November 1st in any year. We find nothing in any statute providing that such notice should be served on the plaintiff before the county chairman could proceed as directed, nor is there any provision preventing the county from taking the necessary steps to open and put this highway in condition for travel within the period from April 1st to November 1st of any year. The rights under these statutory provisions do not extend to persons who are in default after notice from the town supervisors to remove fences. No such right can reasonably be deduced from the context of these provisions. We are of the opinion that at the time defendants removed plaintiff's fence and disturbed the soil on his premises in preparing it for public travel a lawful highway had been established at this place, and they were acting under the lawful authority of the county board of supervisors in opening and putting the highway in a reasonable condition for public travel. Upon these considerations no cause of action was established against the defendants.

The defendant *John W. Hughes* did not appear and answer separately. He has made no showing that he is a separate party defendant. This leaves him in the position of being simply one of the party defendant, and therefore not entitled to a separate judgment for costs in his favor.

*By the Court.*—The judgment of the lower court is reversed, and the cause remanded with directions to award judgment dismissing the complaint.