STATE EX REL. NORTHWESTERN COAL RAILWAY COMPANY,
Appellant, vs. WILLCUTS, City Clerk, Respondent.

*October 6—October 26, 1909.*

Certiorari: *Taxation: Railroads: Property devoted to public use: Common carriers.*

1. The question of the jurisdiction of a board of review to assess property for local taxation may be raised on *certiorari.*
2. Property of a railway company necessarily used in operating its road is exempt from local taxation under sec. 1215—25, Stats. (Supp. 1906), if the use to which it is applied is a public use under the articles of incorporation and charter of the company.
3. Whether the property of a railway company is devoted to a public use is not determined by the extent of the use but by the right of the public generally to use it and the fact that it is used by all who desire to do so.
4. The mere fact that a large part of the business done by a railway company is done for a coal company owned and controlled by practically the same persons, does not deprive the railway company of its character as a common carrier or render its property devoted to a private use, so long as it was in fact organized as a common carrier and serves the public in that capacity, although location and conditions limit the extent of such service.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

This is an appeal from a judgment quashing a writ of *certiorari.* The writ was issued to review an assessment of plaintiff's property in the city of Superior. The city clerk of the city of Superior made return to the writ showing the action of the board of review respecting the assessment, including the evidence taken before the board.

It appears from the record before the court on motion to quash that the assessors entered upon the assessment roll for 1908 lands and personal property used by the appellant in the operation of its railroad in the city of Superior; that the property consisted mainly of land on which the railroad was constructed, side tracks, a roundhouse for storing engines,

and a scalehouse containing railroad scales and two locomotives; that the incorporators of the plaintiff company duly incorporated for the purpose of constructing, maintaining, and operating the railroad in question for the carriage of freight and passengers, and a patent was duly issued to plaintiff under said articles of incorporation in December, 1892, authorizing plaintiff to construct, maintain, and operate a railroad for public use in the conveyance of persons and property from a point on Allouez Bay at or near the mouth of the Nemadji river in Douglas county, Wisconsin, to some point on the St. Louis river on the boundary line of the state in section 1, town 48, range 15, Douglas county, a distance of about twelve miles; the plaintiff paid into the state treasury of the state of Wisconsin the license fee required by law, and in March, 1908, a license was issued to plaintiff to operate its railroad from January 1 to December 31, 1908, according to law; that the plaintiff has been assessed by the state board of assessment during the years the state board has been in existence, and previous to that time paid a license to the state for the operation of the railroad in question; that the plaintiff has rendered reports to the railroad commission on its property since June, 1901, and made reports to the interstate commerce commission since that time; that the plaintiff has a tariff of rates prepared on the transfer of coal to connecting lines, which rate is posted as requested by the interstate commerce commission and the railroad commission; that the property of the plaintiff is shown on the statement issued by the state board of taxation, showing valuation placed upon railroads in the state for the year 1908, and is the same property in question; that this property was acquired by plaintiff soon after its organization, partly by purchase and partly by condemnation.

It further appears that originally the road extended to the St. Louis river, and in 1899 a part of the road was sold to the Great Northern Railway Company; that the road now

owned by the plaintiff is used for the transportation of freight principally; that it accepts any business that is offered and connects with the Great Northern, Duluth, South Shore & Atlantic, Omaha, and Northern Pacific Railway Companies; that its manner of handling freight is similar to that of other terminal companies, ninety to ninety-five per cent. or more of which business is the transportation of coal; that the northern terminus of the road is the coal dock, the other connecting with other lines of railroad in the city of Superior; that the company has about eight miles of track, including switch tracks, the main line being a trifle less than three miles; that plaintiff owns the coal dock which is operated by the Pittsburgh Coal Company of Wisconsin; that the principal business of plaintiff is securing empty cars, taking them to the dock, and returning them loaded with coal to the connecting railroads; that the coal is received at the dock from boats, but all coal received at the dock is not received by the Pittsburgh Coal Company; that the dock at various times has handled coal for other parties than the Pittsburgh Coal Company, but the bulk of the coal is received by said company; that plaintiff handled about 5,000 tons which was not purchased from nor sold by the Pittsburgh Coal Company; that plaintiff's tariff rate covered nothing but coal; that it had no depot and no cars of any kind, but had an office building; that plaintiff is a separate corporation from the Pittsburgh Coal Company, but the ownership of the stock is practically the same; that the connecting lines of railroad paid plaintiff's charge for switching coal and its side tracks were used for storing loaded and empty cars; that plaintiff's road would accept any freight or passengers or anything else—any kind of cars that is presented for transportation—and has handled passenger cars.

The property used in operating plaintiff road having been assessed by the city of Superior for local taxation by the board of review, this proceeding was brought to vacate and set aside the assessment.

State ex rel. Northwestern C. R. Co. v. Willcuts, 140 Wis. 448.

For the appellant there was a brief by *Grace & Hudnall,* and oral argument by *G. B. Hudnall.*

*Thos. E. Lyons,* for the respondent.

KERWIN, J.   The sole question upon this appeal is, Was the property of the plaintiff taxable by the city of Superior? This question turns on whether the property is exempt from taxation under the statute because of its being used for railroad purposes.   It is the contention of respondent that the railroad of plaintiff is not operated for public use and is not a common carrier; therefore its property is subject to local taxation.   The plaintiff was organized under ch. 87 of the statutes of this state for public purposes—for the carriage of freight and passengers.   No question is made upon this point, but it is insisted that it is operating its railroad for a private and not a public purpose; therefore its property so used is subject to local taxation.   It may be conceded, as insisted by respondent, that *certiorari* reaches only jurisdictional errors; therefore, unless the property put upon the assessment roll was not subject to taxation, the judgment below was right. The facts as they appear from the record are undisputed; therefore the question is sharply raised whether the board of review was acting without jurisdiction in assessing the property of the appellant, and this question may be raised by *certiorari* proceedings.   *State ex rel. Augusta v. Losby,* 115 Wis. 57, 90 N. W. 188; *State ex rel. N. C. Foster L. Co. v. Williams,* 123 Wis. 61, 100 N. W. 1048.

Prior to the present railway tax law, "the tracks, right of way, depot grounds, buildings, machine shops, rolling stock, and all other property necessarily used in operating any railroad in this state belonging to any railroad company" have been exempt from local taxation.   Subd. 14, sec. 1038, Stats. (1898).   Sec. 1215—25, Stats. (Supp. 1906), provides that "the tax and license fees imposed by this act shall be in lieu of all other taxes on the property of such railroad companies, necessarily used in the operation of said railroads in

this state." So, under the law in relation to the subject under consideration, the question is whether the property is necessarily used for a public or *quasi*-public purpose in order to enable the plaintiff to perform its duty as a common carrier, and whether it was in 1908 used for such purpose.  *Duluth, S. S. & A. R. Co. v. Douglas Co.* 103 Wis. 75, 79 N. W. 34; *Chicago, St. P., M. & O. R. Co. v. Douglas Co.* 122 Wis. 273, 99 N. W. 1030; *Merrill R. & L. Co. v. Merrill,* 119 Wis. 249, 96 N. W. 686. The property owned by the plaintiff and attempted to be taxed by the city of Superior was necessary to enable the plaintiff to carry out its franchise obligations, and was therefore not subject to taxation if the use to which it was applied was a public use under the articles of incorporation and charter of plaintiff.  *Chicago & N. W. R. Co. v. Forest Co.* 95 Wis. 80, 70 N. W. 77; *Chicago, M. & St. P. R. Co. v. Milwaukee,* 89 Wis. 506, 62 N. W. 417; *Washburn v. Washburn W. Co.* 120 Wis. 575, 98 N. W. 539; *In re Milwaukee S. R. Co.* 124 Wis. 490, 102 N. W. 401. It is without dispute that plaintiff was regularly organized under ch. 87 for a public purpose, namely, to carry freight and passengers, and a charter granted from the state for such purpose, and annually from the time of its organization received a license from the state to operate its road and paid the license fees. But the argument is that it was doing a private business. This argument is based upon the ground that its principal business is not a general railroad business for the carriage of freight and passengers, but is a private business. Several cases are cited by respondents, but we shall refer to those only in this court, and think it will be seen that they are not controlling in the case now before us.

In *Chicago & N. W. R. Co. v. Oshkosh, A. & B. W. R. Co.* 107 Wis. 192, 83 N. W. 294, the corporation was organized to carry persons only, not passengers and freight, and it was held that the statute does not authorize organizations to carry

passengers only; hence the articles did not show that the corporation was a common carrier. *Maginnis v. Knickerbocker I. Co.* 112 Wis. 385, 88 N. W. 300, is a case where the railroad company was organized as a purely private enterprise; therefore did not have the power of eminent domain. To the same effect are *McKivergan v. Alexander & E. L. Co.* 124 Wis. 60, 102 N. W. 332, and *Wallman v. R. Connor Co.* 115 Wis. 617, 92 N. W. 374. And in *Wisconsin W. Co. v. Winans,* 85 Wis. 26, 54 N. W. 1003, the question was whether the company had the power to condemn land under its charter, and it was held that the right turned upon whether the property sought to be taken was necessary for public use.

Under the rule laid down in these cases it is said that the use to which the plaintiff's property is put is not a public use, because its principal business is carrying coal of the Pittsburgh Coal Company from the dock owned by plaintiff and operated by the coal company, and that plaintiff has no station or depot, and that one end of its line terminates at its coal dock and the other where it connects with the Northern Pacific, Omaha, Duluth, South Shore & Atlantic, and Great Northern railway tracks, and that it has no facilities for handling passengers, and is so situated that it receives practically no freight to handle except coal from its own dock operated by the Pittsburgh Coal Company, the stock of which latter company is owned by the same parties who own and control the plaintiff company. The mere fact, however, that a large part of the business of plaintiff was done for the Pittsburgh Coal Company in which it is interested did not deprive plaintiff of its character of common carrier or render its property devoted to a private use so long as it was in fact organized as a common carrier and serving the public in that capacity, although to a limited extent because of location and conditions which limited such service. *Kansas & T. C. R. v. Northwestern C. & M. Co.* 161 Mo. 288, 61 S. W. 685;

*Riley v. Charleston U. S. Co.* 71 S. C. 457, 51 S. E. 485. Whether the property of plaintiff is devoted to a public use is not determined by the extent of the use, but by the right of the public generally to use it, and the fact that it is used for public purposes by all who desire to use it.

Upon the admitted facts as they appear from the record we see no escape from the conclusion that the plaintiff was a common carrier and its property devoted to a public use, and, though limited in the extent of such business, it was doing the business of a common carrier. Its road and switch tracks were subject to use by all the public. The road carried for the public generally between its termini, the coal dock and several other railroads. It did not have the usual accommodations for carrying passengers because of location and conditions, and because of such location and conditions there were no passengers to carry. But it held itself out ready and willing to carry all passengers, and would accept any passengers or any kind of cars presented for transportation over its line without discrimination. It is true the business was largely freight and largely the freight of the Pittsburgh Coal Company, but it is also true that between the termini of its road the plaintiff served all people alike without discrimination and in compliance with law applicable to common carriers, and it was therefore at least doing the business of a common carrier, and ready and willing to do all business presented in the locality it operated. It therefore stood on the same basis as any other common carrier organized under the statute respecting the taxation of its property. *Chicago & N. W. R. Co. v. Morehouse,* 112 Wis. 1, 87 N. W. 849; *Butte, A. & P. R. Co. v. Montana U. R. Co.* 16 Mont. 504, 41 Pac. 232; *Chicago, B. & N. R. Co. v. Porter,* 43 Minn. 527, 46 N. W. 75; *State ex rel. Duluth B. L. R. Co. v. District Court,* 54 Minn. 34, 55 N. W. 816; *Bridal Veil L. Co. v. Johnson,* 30 Oreg. 205, 46 Pac. 790; *Kansas & T. C. R. v. Northwestern C. & M. Co.* 161 Mo. 288, 61 S. W. 685; *Chicago, St. P., M. & O. R. Co. v. Douglas Co.* 122 Wis. 273, 99

N. W. 1030; *Duluth, S. S. & A. R. Co. v. Douglas Co.* 103 Wis. 75, 79 N. W. 34.

We are convinced upon principle and authority that the plaintiff is a common carrier, and that the property in question used in operating its road was not subject to taxation by the city of Superior; therefore the judgment quashing the writ of *certiorari* must be reversed.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for further proceedings according to law.